UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cv-00426-RLY-TAB |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.  Introduction**

Plaintiff Christopher C. appeals the Social Security Administration's denial of his application for disability insurance benefits.  Plaintiff challenges multiple aspects of the Administrative Law Judge's decision, arguing that the ALJ erred by: (1) disregarding critical evidence outside the date last insured ("post-DLI evidence"); (2) improperly assessing Plaintiff's subjective symptoms; (3) failing to explain the bases for finding Plaintiff capable of light work; and (4) not explaining how he found Plaintiff could frequently manipulate, given his essential tremors.  Plaintiff's challenges are valid.  While the ALJ did review some post-DLI evidence, the ALJ completely ignored additional post-DLI evidence without providing a logical bridge to explain the reason for doing so.  The ALJ also relied on his own lay interpretation to evaluate the evidence and Plaintiff's subjective symptoms. For these and additional reasons noted below, Plaintiff's request for review should be granted.  [Filing No. 11.]

**II.     Background**

On April 14, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on September 1, 2016. The SSA denied Plaintiff's claims initially and upon reconsideration.  Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled.  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of September 1, 2016, through his date last insured of December 31, 2020.  At step two, the ALJ determined that Plaintiff had the following severe impairments: chronic liver disease or cirrhosis; chronic hepatitis C; degenerative joint disease of the left shoulder; and an essential tremor.  [Filing No. 9-2, at ECF p. 14.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations.  The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he: "could frequently engage in gross or fine manipulation with both upper extremities; could not climb ladders, ropes, and scaffolds; and could occasionally balance as defined by the *Selected Characteristics of Occupations* (SCO) and *Dictionary of Occupational Titles* (DOT)." [Filing No. 9-2, at ECF p. 16.]  At step four, the ALJ concluded that Plaintiff could perform past relevant work as a hotel front desk clerk.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

2

**III. Discussion**

Plaintiff raises a variety of arguments in an effort to demonstrate the ALJ erred in denying his claim for benefits and that the ALJ's decision contained errors of law or serious omissions that render it unreliable.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

**A.      Consideration of Post-DLI Evidence**

Plaintiff argues that the ALJ had a myopic focus on the "period at issue in this decision," and in doing so, erred by disregarding post-DLI evidence, or evidence outside the period at issue in this decision from Plaintiff's alleged onset date to the date last insured.  [Filing No. 11, at ECF p. 8.]  The ALJ did address some post-DLI evidence, stating:

> Although the relevant inquiry in this matter is whether the claimant was disabled on or before his date last insured of December 31, 2020, I have considered all the relevant medical evidence, including that from after such date, in making this determination.  In particular, the record shows that the claimant underwent additional diagnostic imaging studies in April of 2021 due to his complaints of dysuria and hematuria.  These studies showed nodularity and irregularity suggestive of cirrhosis, chronic liver disease, and splenomegaly.  At evaluations in the first half of 2021, the claimant reported experiencing some ongoing fatigue,

3

> tremors, and shortness of breath with exertion.  Nevertheless, he did not describe any significant abdominal pain, weakness, or other physical symptoms.  He specifically denied having any poorly controlled confusion or weight loss and generally appeared well-nourished with no documented abdominal tenderness, cognitive impairment, or gait-related deficits.  It was felt that his tremors could be a sign of early hepatic encephalopathy.

[Filing No. 9-2, at ECF p. 18.]

Plaintiff acknowledges that the ALJ referenced some post-DLI evidence.  However, Plaintiff maintains that the ALJ erred by failing to consider additional, critical post-DLI evidence bearing directly on Plaintiff's conditions and limitations during the period at issue.  From May to June 2021, Plaintiff was hospitalized twice for shortness of breath that did not respond to treatment at that time.  [Filing No. 9-8, at ECF p. 3-109.]  In addition, imaging during Plaintiff's hospitalization revealed an elevated posterior left hemidiaphragm with associated left lower lobe opacities, which could represent atelectasis and/or pneumonia.  [Filing No. 9-8, at ECF p. 45-46.] Plaintiff testified at the hearing before the ALJ regarding surgery he had on his diaphragm that caused paralysis on his left side, and the impact that has on his ability to breathe.  [Filing No. 9-2, at ECF p. 42.]

The ALJ did not specifically address these hospitalizations or imaging.  Nevertheless, the Commissioner argues that Plaintiff's argument has no merit because his complaints during the period at issue did not include any significant breathing difficulties but rather primary complaints of abdominal pain, tremors, and shoulder pain.  Therefore, the Commissioner contends that it was entirely appropriate for the ALJ to focus on evidence regarding tremors, fatigue, abdominal pain, and left shoulder pain when assessing Plaintiff's RFC for the period at issue, and that allegations of significant physical limitations were not consistent with the evidence available for that period.  [Filing No. 14, at ECF p. 5.]  In making this argument, the Commissioner does not provide any citation to case law or support in the medical record.

4

Plaintiff notes that his pulmonologist concluded in December 2021 that the left diaphragm paralysis was likely caused by "left phrenic nerve injury at time of should surgery early 2020" and related most likely to nerve compression or stretching. [Filing No. 9-9, at ECF p. 4.] Plaintiff argues that this evidence corroborates Plaintiff's reports during the relevant time of difficulty with physical exertion due to shortness of breath. In relation to the December 2021 record from Plaintiff's pulmonologist, the Commissioner claims that this was just an initial impression and that Plaintiff's doctors later clarified that the impairment was unrelated to his prior surgery. However, the Commissioner's synopsis is not an accurate summation of the medical record. Rather, in December 2021, a physician noted that etiology of Plaintiff's left diaphragmatic paralysis was unknown and "not likely to be due to previous surgery or malignancy based on review of recent CT scans." [Filing No. 9-8, at ECF p. 273.] Thus, this physician did not completely rule out that the condition and surgery were unrelated. Moreover, as Plaintiff points out in his reply brief, while the specific etiology of the condition may evolve over the course of treatment, that does not make the limitations or restrictions stemming from the condition irrelevant. [Filing No. 15, at ECF p. 7.]

Even more important, while it is not the role of the Court to re-weigh the evidence, the ALJ must build a logical bridge between the evidence and the conclusion. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion." (Internal citation and quotation marks omitted)). The ALJ completely omits discussion of this relevant evidence regarding Plaintiff's hospitalizations for shortness of breath and related imaging. Thus, the ALJ's decision lacks an accurate and logical bridge between this evidence,

5

Plaintiff's reports of difficulty with physical exertion due to shortness of breath, and the ALJ's conclusion that Plaintiff remained capable of light work.

The ALJ's complete lack of discussion of this evidence and its potential impact on Plaintiff's RFC was not harmless. Plaintiff testified that the left lung diaphragm issue impacted his ability to walk. If the evidence, in coordination with Plaintiff's other symptoms, corroborates Plaintiff's limitations due to shortness of breath, the ALJ needed to factor those limitations into Plaintiff's RFC or otherwise explain why they are reasonably excluded.

**B.  Symptom Assessment**

Next, Plaintiff claims that the ALJ erred in his assessment of Plaintiff's subjective symptoms. [Filing No. 11, at ECF p. 12.] The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 9-2, at ECF p. 17.]

As noted above, the ALJ concluded Plaintiff could perform light work, with additional limitations. Plaintiff argues that the ALJ's subjective symptom analysis was patently wrong in this case because the ALJ (1) improperly relied on his own lay interpretation of objective medical evidence to find Plaintiff less limited than alleged; (2) rejected Plaintiff's symptoms based on the purported absence of symptom reports during the relevant period; and (3) failed to address significant post-DLI evidence strongly corroborating Plaintiff's reported symptoms and limitations during the relevant period.

In relation to Plaintiff's reports of hand tremors, which were documented on various medical exams, the ALJ found that Plaintiff's reports were outweighed by exams showing normal range of motion, strength, and coordination, no focal neurological deficits, and that Plaintiff was cooperative and oriented. [Filing No. 9-2, at ECF p. 18.] However, the ALJ fails to point to any medical evidence or opinions concluding that range of motion, strength, and coordination issues are associated with essential tremors. Likewise, it is unclear why the ALJ believed Plaintiff's cooperative behavior and being oriented during exams undermined his limitations due to documented tremors. This puzzling analysis highlights why an ALJ must rely on medical interpretations of objective evidence, rather than lay interpretation. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (ALJ not permitted to "conclude, without medical input, that [the claimant's testing results and exam findings were] 'consistent' with the ALJ's conclusions.").

Here, Plaintiff's primary care provider, Dr. David Mullen from Indiana University Health Family Medicine, opined that Plaintiff's tremors, diaphragmatic hemiparalysis, and decreased exercise tolerance prevented him from being able to stand and walk more than 1 hour a day or engage in more than occasional reaching, handling, fingering, feeling, pushing, and pulling.

7

[Filing No. 9-9, at ECF p. 39-45.] The ALJ rejected that opinion, and there were no other medical opinions in the record.[1] Once the ALJ rejected Dr. Mullen's opinion, no other opinions remained. Thus, the foundation for the ALJ's analysis was solely his interpretation of the evidence. This is insufficient.

Plaintiff further argues that the ALJ's conclusion that Plaintiff's treatment history was inconsistent with his alleged symptoms and limitations is not supported by the evidence. [Filing No. 11, at ECF p. 14.] The ALJ noted that Plaintiff complained of shortness of breath in 2021, after his date last insured. [Filing No. 9-2, at ECF p. 18.] However, Plaintiff points to medical records from January 2020, one month after shoulder surgery, where Plaintiff reported shortness of breath, wheezing, and the feeling of "hav[ing] no air" for the past two days to his primary care provider. [Filing No. 9-7, at ECF p. 92-95.] Plaintiff's primary care physician diagnosed him with shortness of breath at that time but did not know the cause of Plaintiff's symptoms. Moreover, the medial record contains reports of hand tremors impacting Plaintiff's ability to write and hold onto items dating back to at least late 2018. [Filing No. 9-7, at ECF p. 111-16.]

The Commissioner's response highlights the ALJ's statement that it was reasonable to assume that Plaintiff would have sought more treatment during the period at issue, had he been as physically limited as he claimed. [Filing No. 14, at ECF p. 5.] This defense is unavailing. Plaintiff was hospitalized and underwent surgery. The ALJ did not explain how even an allegedly conversative treatment undermines the severity of Plaintiff's symptoms. There is no suggestion in the record that Plaintiff could have done anything else. The facts do not support the ALJ or the Commissioner's position.

---

[1] The ALJ's treatment of Dr. Mullen's opinion is discussed more below.

### C. Light RFC explanation

Plaintiff also argues that the ALJ erred by failing to explain the bases for concluding that Plaintiff could perform an RFC of light work, which does not adequately address Plaintiff's limitations due to shortness of breath and obesity. [Filing No. 11, at ECF p. 16.] After summarizing the evidence, the ALJ stated that the light RFC accounted for Plaintiff's chronic liver disease, shoulder impairment, and essential tremors. [Filing No. 9-2, at ECF p. 19.] However, Plaintiff argues that the ALJ's decision lacks an accurate and logical bridge between the evidence at the ALJ's conclusion. Plaintiff highlights the fact that the state agency medical consultants did not issue an opinion and the ALJ rejected the only medical opinion of record from Plaintiff's primary care provider, Dr. Mullen. Thus, the result is an ALJ's decision based entirely on the ALJ's lay interpretation of evidence. Plaintiff reiterates his other arguments, including that the ALJ improperly analyzed objective medical evidence and that he completely ignored significant post-DLI evidence corroborating Plaintiff's symptoms of shortness of breath and physical limitations.

In relation to Dr. Mullen, the Commissioner improperly asserts arguments to the Court that were not raised in the ALJ's decision. The ALJ stated that he did not find Dr. Mullen's opinion persuasive because the opinion "does not appear to apply to the period at issue in this decision and is not entirely consistent with the objective evidence showing the claimant was generally described as well-nourished and oriented with no documented abdominal tenderness, cognitive impairments, or gait-related deficits through the date last insured." [Filing No. 9-2, at ECF p. 19.] Yet the Commissioner's argument on appeal focuses on refuting the idea that Dr. Mullen had been Plaintiff's regular physician since 2016, claiming "there is no treatment record by this doctor anywhere in the record." [Filing No. 14, at ECF p. 7.] The ALJ did not articulate

9

this as a basis for rejecting Dr. Mullen's opinion in the ALJ's decision. Thus, this argument is impermissible. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) (Commissioner is forbidden from raising rationalizations the ALJ did not make); *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) ("*Chenery* . . . forbids the Commissioner from relying at this stage on a rationale that was not used by the agency.").

Rather, as noted above, the ALJ disregarded Dr. Mullen's opinion in part because it applied only to a period of time outside of the period at issue (post-DLI). Plaintiff argues there is no basis to support this rationale. Dr. Mullen's opinion emphasizes Plaintiff's tremors and alleged limitations due to a paralyzed diaphragm. As noted above, these conditions existed, were referenced, and were treated during the relevant time period and post-DLI. Thus, there is no support for the ALJ's conclusion that Dr. Mullen's opinion did not relate to the relevant period. In addition, Plaintiff notes that Dr. Mullen was within the same medical practice as all of the providers who treated Plaintiff's diaphragm paralysis and resulting breathing difficulties (IU Health). Plaintiff testified that Dr. Mullen is his "regular physician." [Filing No. 9-2, at ECF p. 45.] Thus, Dr. Mullen presumably was fully apprised of Plaintiff's complete treatment history when he issued his opinion regarding Plaintiff's limitations and was in a far better position than the ALJ to assess Plaintiff's limitations.[2] All of these factors highlight that the ALJ rejected Dr. Mullen's opinion for unsupported reasons, rending further error to the ALJ's analysis of Plaintiff's resulting RFC.

---

[2] Plaintiff also pokes holes in the ALJ's claim that Dr. Mullen's opinion was "not entirely consistent with the objective evidence showing Plaintiff was generally described as well-nourished and oriented with no documented abdominal tenderness, cognitive impairments, or gait-related deficits through the date last inured." [Filing No. 9-2, at ECF p. 19.] Plaintiff highlights the ways that Dr. Mullen's opinion was consistent with Plaintiff's subjective reports and inconsistent with the ability to perform even sedentary work. [Filing No. 11, at ECF p. 20.]

10

### D. Frequent Manipulation

Finally, Plaintiff argues that the ALJ erred by not explaining his conclusion that Plaintiff could engage in frequent manipulation, despite the presence of essential tremors. [Filing No. 11, at ECF p. 21-22.] The ALJ found that Plaintiff could frequently engage in gross and fine manipulation with both upper extremities. [Filing No. 9-2, at ECF p. 16.] Frequently has been defined in the Social Security Regulations as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 631251, at *5-6. Yet Plaintiff argues that the ALJ did not tie any evidence to, or provide any explanation for, this restriction.

Plaintiff reported that he had difficulty using his hands because of his tremors, dropped items when attempting to carry them, and was let go from his most recent job due to missing at least 3 to 4 days of work a week because of constant tremors in his arms and legs. [Filing No. 9-2, at ECF p. 39-41.] Dr. Mullen opined that Plaintiff could only occasionally handle, finger, and feel due to his essential tremors. [Filing No. 9-9, at ECF p. 39-45.] Ultimately, the ALJ rejected Dr. Mullen's opinion and found Plaintiff not as limited as alleged. However, the ALJ did not explain how a restriction to *frequent* manipulation adequately accommodated Plaintiff's limitations.

The Commissioner argues that the evidence Plaintiff cites from treatment records in December 2018, January 2019, and May 2022, fails to prove his point. [Filing No. 14, at ECF p. 8.] The Commissioner noted that in December 2018, Plaintiff reported experiencing tremors in the right hand and dropping objects, but examination showed intact strength and normal coordination in the upper extremities, and he had tremors only when his hand was outstretched. [Filing No. 9-7, at ECF p. 114-15.] The Commissioner also highlighted Plaintiff's report in January 2019 that his tremor was better and argues that the ALJ relied on this and similar

11

evidence from December 2018 to June 2019, where treatment records showed intact strength, no resting tremors, and normal coordination.  [Filing No. 9-2, at ECF p. 18.]  While this evidence relates to Plaintiff's tremors and the ALJ's conclusion that they were not as disabling as Plaintiff alleged, it does not sufficiently explain how the ALJ reached the conclusion that Plaintiff could frequently manipulate, despite the presence of essential tremors.  The ALJ does not cite any evidence in the record providing that Plaintiff can manipulate with his hands at that frequency.  On remand, the ALJ should address all relevant evidence of Plaintiff's tremors and ensure that the ALJ's decision reflects a logical bridge between that evidence and the ALJ's conclusion.

### IV.     Conclusion

For these reasons, Plaintiff's request for review should be granted.  [Filing No. 11.]  Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 12/4/2023

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email